IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MICHAEL RAY TURNER,

Plaintiff,

vs.

LONG, cpl, badge # unknown; BECKY, stg.,
badg3 # unknown; DAKOTA COUNTY
CORRECTIONAL FACILITY, MARQUEZ,
Cpl. badge # 97052; and ADAM HOUGH,
Sgt., badge # 97053;

Defendants.

8:24CV492

MEMORANDUM AND ORDER

This matter is before the Court on a motion for status, filed by Plaintiff Michael Ray Turner ("Plaintiff"). Filing No. 60. This matter is also before this Court to perform its initial review of Plaintiff's Amended Complaint[1] pursuant to 28 U.S.C. §§ 1915(e) and 1915A, to determine whether summary dismissal is appropriate.

The motion for status is granted and the status of the matter is provided here.

Plaintiff, a pretrial detainee[2] proceeding in forma pauperis,[3] initially filed his Complaint on September 27, 2024, in the Northern District of Iowa as a joint complaint

---

[1] The Court shall refer to Filing Nos. 57 and 58 collectively as the "Amended Complaint" for the remainder of this Memorandum and Order. Further, Plaintiff references arguments and exhibits he filed in support of his specific claims while the action was still a joint-plaintiff action. Filing No. 57 at 2 (referencing argument and exhibits in support of his Amended Complaint at Filing No. 31 at 1, 4, and 5). As this Court allowed Plaintiff to incorporate claims and exhibits previously filed at Filing No. 31 into his Amended Complaint, see Filing No. 56 at 6, this Court shall also consider Filing No. 31 as a supplement to the Amended Complaint.

[2] On his Amended Complaint Plaintiff checks the following boxes under the heading prisoner status: pretrial detainee, convicted and sentenced state prisoner, and "other" (stating "pending non-frivolous federal charges"). Filing No. 58 at 4. It appears from Plaintiff's allegations that at the time the Complaint was filed he was a federal pre-trial detainee being housed at a non-federal facility while he awaited trial on federal charges. Filing No. 57 at 1; Filing No. 58 at 4. As such, this Court shall treat Plaintiff's claims as arising when he was a pretrial detainee. To the extent this Court has misunderstood Plaintiff's incarceration status, he must clarify his status at the time the Complaint was filed in his second amended complaint.

[3] See Filing No. 56 (granting in forma pauperis).

(the "Complaint"), along with four other inmate-plaintiffs who were housed at the Dakota County Jail.[4]  Filing No. 5.  The matter was transferred to this Court on October 1, 2024. Filing No. 6.  Upon initial review of the Complaint (and multiple supplements filed by Plaintiff and several other joint plaintiffs), this Court determined that the parties could not proceed as joint-plaintiffs under Rule 20(a)(1) of the Federal Rules of Civil Procedure because it appeared the claims asserted did not arise out of the same transaction, occurrence, or series of transactions or occurrences.  Filing No. 55 at 6–8.  As a result, this Court determined that each of the joint plaintiffs must proceed individually, severing their claims into separate cases.  Filing No. 55 at 10.

The Court also determined that while the Complaint (and supplements) contained claims alleging denial of access to the courts, cruel and unusual punishment, due process violations, deliberate indifference to medical needs, and liberty violations, the Complaint did not contain sufficient factual allegations to support each claim and/or it was not possible for this Court to determine which factual allegations related to each individual plaintiff.  Filing No. 55 at 8–9.  As a result of the Court's review of the claims in the Complaint, Plaintiff was ordered to file an amended complaint.  Filing No. 56 at 5.  In compliance, on January 21, 2025, and January 22, 2025, Plaintiff filed a motion to amend and supplement to his amended complaint, Filing No. 57, and an Amended Complaint (the "Amended Complaint"), Filing No. 58.

This Court shall now perform its initial review of Plaintiff's Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)  and 1915A, to determine whether summary dismissal

---

[4] As Plaintiff appears to use the "Dakota County Jail" and the Dakota County Correctional Facility (the "DCCF") interchangeably, this Court shall refer only to the DCCF for the remainder of this Memorandum and Order.

is appropriate. For the reasons set forth below the Court finds that it is, but in lieu of dismissal this Court shall sua sponte grant Plaintiff leave to amend in compliance with this Memorandum and Order.

## I. SUMMARY OF AMENDED COMPLAINT

Plaintiff alleges violations of the First, Fifth, Eighth and Fourteenth Amendments of the United States Constitution against defendants Cpl. Marquez ("Marquez"), Sgt. Adam Hough ("Hough"), Cpl. Long ("Long"), and Sgt. Becky ("Becky"), in their individual and official capacities as employees of the DCCF, and the DCCF, resulting from the denial of access to federal law facilities or adequate assistance from someone trained in the law. Filing No. 58 at 1–3; Filing No. 57 at 3.

Specifically, Plaintiff alleges that while being held as a pretrial detainee at DCCF, on September 5, 2024, he requested access to a "federal law library to assist in defending [himself and] was denied." Filing No. 58 at 4. Plaintiff alleges that he continued to ask for federal law library access multiple times after September 5 through December of 2024, but was denied by Long, Hough, Becky, and Marquez. Filing No. 57 at 2. He further submits that he has been through the entire institutional grievance process multiple times to no avail, and that trying to follow the chain of command to obtain access to someone in the prison system who will respond to his grievances is futile because the officers use the "onion protection clause" to avoid responsibility by blaming other institutional personnel for the lack of adequate response/action. Id. Plaintiff further asserts that the Defendants also told him to "get legal documents from your attorney." Id. at 3. Because of the continual denial of access to a law library Plaintiff alleges that his attempts at pursuing a non-frivolous legal claim were hindered, as was his ability to defend himself

against legal charges against him, and that multiple "motions have been denied" because he has "no way to argue or know the simplest of rights" due to his lack of access to legal materials. *Id.* at 5.

As a result of his filing grievances and due to the filing of the "civil suit," Plaintiff alleges that he received "severe backlash" from defendant Hough, who threatened Plaintiff at gun point for asking a question. *Id.* at 4. Plaintiff explained that he filed a grievance about Hough's threat but got "absolutely nowhere." *Id.* He further asserts he was threatened by officer Marquez, who said "if we wanted to shoot you with the pepper ball shot gun we would have." *Id.*

Plaintiff further asserts that his legal mail (containing the address and name of an attorney on the return address label) was opened outside his presence by defendant Marquez, to which Plaintiff again filed a grievance. *Id.* The institutional response to the grievance stated that the mail was opened because it was not labeled legal mail. *Id.*

Plaintiff also asserts that DCCF does not fully screen new inmates for various diseases such as crabs, lice, or bed bugs. *Id.* at 6. And, he asserts DCCF does not segregate state from federal inmates, which also causes him stress, insomnia, and anxiety due to having received threats from other inmates. *Id.* at 5.

Plaintiff submits that as a result of the defendants' actions he suffers from stress, depression, insomnia, and anxiety, but under the "injuries" heading of his form complaint he writes "N/A." Filing No. 58 at 5; Filing No. 57 at 5. Plaintiff also argues that as a result of his lack of access to a law library he had to "take a plea that [he did not] agree with at all . . . due to lack of federal law library [access] to properly assist in defending [himself]." Filing No. 58 at 7 (capitalization corrected).

4

As relief, Plaintiff asks for damages in the amount of approximately $100,000 and an order from this Court requiring DCCF to furnish federal inmates with an adequate federal law library.  *Id.* at 5.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. § 1915(e).  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569–70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).  However, "[a] pro se complaint must be liberally construed, and

pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

### III. DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).  As Plaintiff brings this suit pursuant to 42 U.S.C. § 1983, all of Plaintiff's claims and relief sought in the Amended Complaint must be reviewed to determine if this standard is met.

### A.  Unavailable Claims

#### 1.  Claims against the DCCF

"[C]ounty jails are not legal entities amenable to suit." *Richmond v. Minnesota*, No. CIV. 14-3566 PJS/JSM, 2014 WL 5464814, at *3 (D. Minn. Oct. 27, 2014) (citing *Owens v. Scott Cnty. Jail,* 328 F.3d 1026, 1027 (8th Cir.2003) (per curiam)).  Therefore, Plaintiff's claims against the DCCF cannot proceed and must be dismissed with prejudice.

#### 2.  Violations of procedures for addressing inmate grievances

While Plaintiff's claim relating to an "Onion" protection clause, Filing No. 57 at 2; Filing No. 31 at 2, is unclear, to the extent Plaintiff seeks to allege a claim relating to access to, or the proper function of, the grievance procedures at DCCF, that claim must fail as "[i]nmates do not have a constitutionally protected right to a grievance procedure. Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . . grievance procedure is not

actionable under § 1983." *Hildebrand v. Kugler*, No. 1:19-CV-01006, 2019 WL 2134622, at *1 (W.D. Ark. May 3, 2019), *report and recommendation adopted*, No. 1:19-CV-1006, 2019 WL 2130152 (W.D. Ark. May 15, 2019) (quotation and citation omitted) (collecting cases).    Therefore, any claim relating to Plaintiff's access to, or the defendants' compliance with, DCCF grievance policies and procedures against any remaining defendant cannot proceed.    Moreover, as this appears to be the only claim raised by Plaintiff against defendants Long and Becky, and as this claim cannot proceed against both defendants, Long and Becky should be dismissed from this action.

### B.  Official Capacity Claims under 42 U.S.C. § 1983

Plaintiff brings suit against all defendants in their official capacities as employees of DCCF.    Where claims are made against defendants in their official capacities, such claims are construed as filed against the officers' employing entity, which here is Dakota County.    *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."); *Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing suit against the entity. A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity." (citation omitted)).

A county may only be liable under section 1983 if its "policy" or "custom" caused a violation of a plaintiff's constitutional rights.    *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)).    A plaintiff "must allege facts which would support the existence of an unconstitutional policy or custom."    *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*,

7

340 F.3d 605, 614 (8th Cir. 2003). Dismissal is proper when a complaint does not contain any "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom . . . ." *Id.*

Here, aside from alleging a policy regarding how grievances are reviewed by institutional staff, a claim which cannot proceed here, Plaintiff does not allege that any policy or custom of Dakota County caused his injuries. As such, Plaintiff failed to allege a plausible claim for relief under 42 U.S.C. § 1983 against any defendant in their official capacity, and his official capacity claims against all remaining defendants shall be dismissed.

## C. Individual Capacity Claims

### 1. Eighth/Fourteenth Amendment cruel and unusual punishment

Plaintiff alleges that DCCF houses both state inmates and federally detained pro se plaintiff inmates such as himself together, which he alleges results in threats from other inmates. Filing No. 57 at 5. Plaintiff further asserts that DCCF does not fully screen new inmates for various diseases such as Covid 19 or the flu, which has resulted in Plaintiff falling ill and having to buy medications. *Id.* at 6.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). Plaintiff appears to have been a pretrial detainee at the time the alleged violations occurred, and the Eighth Amendment does not apply to conditions of confinement cases brought by pretrial detainees. *Stearns v. Inmate Servs. Corp., et al.,*

8

957 F.3d 902 (8th Cir. 2020). Such claims must instead be analyzed under the Fourteenth Amendment as set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979). *Id.* Therefore, as an initial matter, all of Plaintiff's Eighth Amendment claims must be dismissed without prejudice.

The following guidance provided by the Eighth Circuit in *Stearns* is relevant to reviewing these claims under the Fourteenth Amendment:

> In *Bell v. Wolfish*, the Supreme Court articulated the standard governing pretrial detainees' claims related to conditions of confinement. The Court held that the government may detain defendants pretrial and "may subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536-37. The Court articulated two ways to determine whether conditions rise to the level of punishment. A plaintiff could show that the conditions were intentionally punitive. *Id.* at 538. Alternatively, if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. *Id.* at 538-39. If conditions are found to be arbitrary or excessive, it is permissible to: infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.* at 539.

*Stearns*, 957 F.3d at 907 (alterations in original) (citations omitted). The Constitution therefore prohibits conditions for pretrial detainees that: (1) are intentionally punitive; (2) are not reasonably related to a legitimate governmental purpose; or (3) are excessive to that stated purpose. *Id.* "In considering whether the conditions of pretrial detention are unconstitutionally punitive, we review the totality of the circumstances of a pretrial detainee's confinement." *Morris v. Zefferi*, 601 F.3d 805, 810 (8th Cir. 2010).

When considering Plaintiff's claim addressing the failure to screen new inmates for illnesses and insects prior to their being housed with other inmates, the Supreme Court's holding in *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993), is instructive, although the

case was analyzed under the Eighth, not the Fourteenth Amendment. The Court held that the Eighth Amendment protects against future harm to inmates if the Plaintiff proves threats to personal safety from conditions, such as mingling of inmates with serious contagious diseases with other inmates, and if the conditions establish deliberate indifference to a substantial risk of serious harm. *Id.*

However, to proceed with such a claim, a prisoner must suffer an actual injury to state an Eighth Amendment or, in this case, a Fourteenth Amendment claim. *See Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). Pursuant to the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). As Plaintiff does not describe the nature of any actual physical injury he may have suffered because of these conditions, or connect any alleged injuries factually to any defendant, Plaintiff fails to state a claim.

As to Plaintiff's allegations that prison officials have failed to protect him from threats due to housing federal and state inmates together, he has also failed to state a claim.

It is well established that the Eighth Amendment "requires prison officials to 'take reasonable measures to guarantee' inmate safety by protecting them from attacks by other prisoners." *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).[5] "Prison officials act unreasonably—thereby violating the Eighth Amendment—when they are deliberately indifferent to a 'substantial

---

[5] The Fourteenth Amendment provides detainees "at least the same level of constitutional protection as the Eighth Amendment," *Nelson v. Shuffman*, 603 F.3d 439, 446 n.3 (8th Cir. 2010), therefore it is appropriate to consider Eighth Amendment protections when analyzing Plaintiff's claim.

risk of serious harm.'" *Nelson*, 603 F.3d at 446 (quotation marks and citations omitted). To prove deliberate indifference, an inmate must make two showings: "The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. The second requirement is subjective and requires that the inmate prove that the prison officials had a 'sufficiently culpable state of mind.'" *Irving v. Dormire*, 519 F.3d at 446 (quoting *Farmer*, 511 U.S. at 834) (internal citation omitted). The deprivation is "'objectively, sufficiently serious,' [under the first requirement when] the official's failure to protect resulted in the inmate being 'incarcerated under conditions posing a substantial risk of serious harm.'" *Young*, 508 F.3d at 872 (quoting *Farmer*, 511 U.S. at 834). "An official is deliberately indifferent [under the second requirement] if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Id.* at 873 (citing *Farmer*, 511 U.S. at 844-45).

Here, if Plaintiff intended to raise this claim against DCCF, it cannot proceed because, as discussed previously, DCCF is an improper defendant and shall be dismissed from this suit. Further, Plaintiff does not factually link the failure to protect to any remaining defendant. And finally, Plaintiff does not explain why state and federal inmates being housed together would present any additional harm not normally present when individuals are incarcerated together. Put another way, Plaintiff's Amended Complaint and supplement do not contain any allegations which would allow this Court to determine that housing federal and state inmates together in the same facility is objectively serious, or which defendant (or defendants) knew of this alleged risk and ignored it. Therefore, without amendment, this claim must also be dismissed.

**2. Denial of access to law library facilities**

Plaintiff alleges that he has consistently been denied access to any law library since his arrival at DCCF which has hindered Plaintiff's ability to pursue a "nonfrivolous legal claim." Filing No. 57 at 5.

Specifically, Plaintiff alleges that in September 2024 he was brought to DCCF following his initial appearance in federal court and requested access to a Federal Law Library but was denied. *Id.* at 1–2. Instead, Plaintiff alleges he was told that no legal aid was available to him and to contact his attorney for whatever legal questions he had. *Id. at 3.* Plaintiff further alleges that he has gone through the entire grievance process to no avail and that he has been denied access to any legal aid since his arrival at DCCF without any resolution. *Id.*

> Pre-trial detainees have a right to meaningful access to courts and to judicial process. *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (state prisoners); *Younger v. Gilmore*, 404 U.S. 15 (1971). The City must provide its pre-trial detainees either with "adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828.

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1052 (8th Cir. 1989). However, only the denial of access to both law libraries and persons trained in the law violate a plaintiff's due process rights. *Id.* (citing *Kelsey v. State of Minnesota*, 622 F.2d 956 (8th Cir. 1980)). Put another way, the lack of a law library does not deny a pretrial detainee access to courts if he has an attorney.

While Plaintiff's claim may potentially be viable, it is unclear to this Court whether Plaintiff had counsel when he was denied access to the law library, and if so, when. It is also unclear to this Court if Plaintiff's requested access related to other matters for which he did not have counsel or if he had counsel for any matter at the time the requests were

made.  This Court is also unable to determine which defendants denied him access to the library and at which times outside of the descriptions provided in the copies of grievances he filed.  *See* Filing No. 31.  Finally, it is unclear if Plaintiff alleges that the Dakota County Jail has no law library of any kind, or if it has a law library, just not one suited to address federal matters.

This Court cannot determine what matter (or matters) Plaintiff sought use of the law library for, when the denials took place and by whom, whether he had counsel at the time, and the nature of the matter or matters for which Plaintiff required access to a law library.  As such, without additional factual detail supporting his claim, this claim against all defendants must be dismissed.

### 3.  First Amendment Retaliation

The First Amendment prohibits government officials "from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To proceed on such a First Amendment retaliation claim, a plaintiff must show that: (1) the plaintiff engaged in protected activity, (2) the government took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.  *Green v. City of St. Louis*, 52 F.4th 734, 739 (8th Cir. 2022).   And, where no protected conduct is alleged, a retaliation claim cannot proceed. *Id.*; *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994) (explaining that because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, it follows that the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed).

Here, there is no question that the filing of a lawsuit is a protected activity, and that Marquez and Hough's verbal and actual threats, including the pointing of a gun at Plaintiff, are adverse actions which would chill the ordinary person from continuing a constitutionally protected activity. Filing No. 57 at 5.   While the filing of lawsuits in the prison context may be considered protected speech, such a threat is *only* protected conduct if the threated suit is based on a legitimate claim (or claims). *See Lewis v. Casey*, 518 U.S. 343, 353 (1996) ("Depriving someone of a frivolous claim ... deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.")).   And while Plaintiff concludes that the lawsuit he sought to file for which he was retaliated against was not frivolous, without some description of the nature of the suit at issue, this Court is unable to accept Plaintiff's conclusion as, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Wit v. City of Lincoln, Nebraska*, No. 4:19CV3006, 2019 WL 1459054, at *3 (D. Neb. Apr. 2, 2019) (citing *Iqbal*, 556 U.S. at 678).   Without any additional facts explaining the nature of the suit which resulted in the retaliation by Marquez and Hough, this claim cannot proceed.

### 4. Interference with legal mail

Plaintiff claims that mail from this Court was opened by defendant Marquez prior to Plaintiff's receipt and outside of Plaintiff's presence. Filing No. 57 at 4.

The Eighth Circuit has made clear that it had "never held or suggested that an isolated, inadvertent instance of opening incoming confidential mail will support a § 1983 damage action. . . . [A]n isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or access to courts, does not

14

give rise to a constitutional violation." *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997).  Further, the seizure of a prisoner's legal papers by prison officials does not violate due process unless the seizure caused prejudice to the prisoner in a legal proceeding. *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006).

Here, it appears that Plaintiff's allegation stems from a single incident, and even if there were more than one incident where Plaintiff's legal mail was opened, Plaintiff does not describe any harm as a result of the alleged openings.  Therefore, as pleaded, his legal mail claim against any defendant cannot proceed.

## IV.  CONCLUSION

For the reasons set forth herein, Plaintiff's Amended Complaint is subject to dismissal pursuant to 28 U.S.C. §§ 1915(e) and 1915A.  However, in lieu of dismissal, on the Court's own motion, Plaintiff shall have 30 days from the date of this Memorandum and Order to file a second amended complaint that sufficiently describes his claims, including naming defendants capable of being sued.  *Plaintiff should be mindful to clearly explain what each defendant did to him, when each defendant did it, how each defendant's actions harmed him, and what specific legal rights Plaintiff believes each defendant violated.  Put another way, the Court cannot guess as to what each defendant did and when, therefore, Plaintiff should set forth factual allegations that establish who each defendant is, when and how they were involved with Plaintiff, and what claims Plaintiff alleges against each of them.  Plaintiff should also set forth allegations to clarify his incarceration status at the time of the alleged violations between September and December 2024.*

15

If Plaintiff fails to file a second amended complaint in accordance with this Memorandum and Order, his Complaint will be dismissed without prejudice and without further notice. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) after he addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED that:

1. The motion for status, Filing No. 60, is granted.

2. All claims against the Dakota County Correctional Facility are dismissed with prejudice.

3. Plaintiff shall have until **June 2, 2025**, to file a second amended complaint addressing the remaining claims and any other claims Plaintiff may seek to raise.

4. If Plaintiff decides to proceed and file a second amended complaint he must: Clearly state a claim or claims upon which relief may be granted against any and all named defendants in accordance with this Memorandum and Order. **Plaintiff is warned that an amended complaint will supersede, not supplement, the previously filed Amended Complaint. Plaintiff must include all of the claims he wishes to pursue against all of individuals he has or will <u>name</u> as defendants that he wishes to proceed against in his second amended complaint. As previously ordered, Plaintiff may rely on or incorporate by reference any allegations made in his prior complaints and supplements, however simply pointing this Court to a prior argument will not suffice. Instead, if referencing a prior pleading or exhibit in his second amended complaint, Plaintiff should provide a summary of the argument made in the referenced document and/or explain its direct relation to the claims**

16

made in the second amended complaint.  Further, Plaintiff should be mindful to explain in his second amended complaint what each defendant did to him, when and where the defendant did it, and how the defendant's actions harmed him.

5.  If Plaintiff fails to file a second amended complaint or otherwise respond to this order, Plaintiff's claims against the remaining defendants will be dismissed without prejudice and without further notice.

6.  To the extent Plaintiff requires additional time to comply with this Memorandum and Order, he must seek an extension via filing a written motion on or before the June 2, 2025, deadline for compliance.

7.  The Clerk of the Court is directed to send Plaintiff the Form Pro Se 14 ("Complaint for Violation of Civil Rights (Prisoner)").

8.  The Clerk's Office is further directed to set a pro se case management deadline in this case using the following text: **June 2, 2025:** Check for second amended complaint.


Dated this 1st day of May, 2025.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge